## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| CARLOS DIAS, JR., individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>LEXISNEXIS    RISK    SOLUTIONS INC.,<br><br>        Defendant. | Case No. _____<br><br>Class Action<br><br>Jury Demand |

## CLASS ACTION COMPLAINT

Plaintiff Carlos Dias, Jr. ("Plaintiff"), brings this Class Action Complaint against LexisNexis Risk Solutions Inc. ("Defendant"), individually and on behalf of all others similarly situated, and allege, upon personal knowledge as to his own actions and his counsel's investigations, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.    Plaintiff brings this class action complaint against Defendant for its failure to properly secure and safeguard the personally identifiable information ("PII") of Plaintiff and other similarly situated customers of Defendant ("Class Members"), including names, Social Security numbers, driver's licenses, dates of birth, and contact information such as phone numbers, mailing addresses, and/or

1

email addresses (the "Data Breach").[1]

2.     According the Defendant's notification letter, Defendant learned of the Data Breach on April 1, 2025, though the breach apparently occurred in December 2024.

3.     As part of the Data Breach, cybercriminals targeted and exfiltrated data from Defendant's third-party service provider that hosts a portion of the data it collects. Though Defendant has not identified the third-party service provider it chose, the entity has been independently identified as GitHub.[2]

4.     Defendant has an obligation to ensure it only conveys Plaintiff's and the Class's PII to entities that have shown their duty to implement reasonable cybersecurity measures to combat the ubiquitous threat of data breaches from cybercriminals bent on using stolen data for identity theft and fraud operations.

5.     Because of Defendant's failures to implement reasonable cybersecurity measures, including administrative safeguards to ensure proper vendor management, 364,333 individuals[3] have suffered a severe invasion of privacy and must now face years of substantially increased risk of identity theft and fraud, especially because the Data Breach exposed their Social Security numbers to identity thieves and other

---

[1] Exhibit A, Notice of Data Breach.
[2] Ionut Arghire, *364,000 Impacted by Data Breach at LexisNexis Risk Solutions*, SECURITY WEEK (May 28, 2025), https://www.securityweek.com/364000-impacted-by-data-breach-at-lexisnexis-risk-solutions.
[3] *Id.*

cybercriminals.

6.      Moreover, Defendant should have known that GitHub was a particularly vulnerable company to entrust the Class's PII to. Indeed, GitHub suffered another data breach just last year.[4]

7.      Reportedly, Defendant discovered the Data Breach only when the threat actors informed Defendant that they had accessed Defendant's GitHub account and stolen the data.[5]

8.      "Data brokers like LexisNexis are part of a billion-dollar industry of companies that profit from collecting and selling access to large amounts of Americans' personal and financial data. LexisNexis uses swathes of consumer information to help companies detect potentially fraudulent transactions, as well as to perform risk assessment and due diligence on would-be customers."[6]

9.      Given Defendant's business and its significant involvement in the collection and maintenance of PII, it had a duty to protect the confidentiality of the information in its possession, custody, and/or control.

10.     Even Defendant's privacy policy represents that it takes its cybersecurity obligations seriously: "We use a variety of administrative, physician,

---

[4] Twingate Team, *GitHub Data Breach: What & How it Happened?* (June 28, 2024), https://www.twingate.com/blog/tips/GitHub-data-breach.

[5] Arghire, *supra* note 2.

[6] Zack Whittaker, *Data Broker Giant LexisNexis Says Breach Exposed Personal Information of Over 364,000 People*, TECH CRUNCH (May 28, 2025), https://techcrunch.com/2025/05/28/data-broker-giant-lexisnexis-says-breach-exposed-personal-information-of-over-364000-people.

and technical security measures to help safeguard your personal information."[7] Yet, it still stored Plaintiff's and the Class's PII in a known-vulnerable system.

11.    By failing to implement reasonable cybersecurity measures, including sufficient logging, monitoring, and alerting capabilities, Defendant ignored Plaintiff's rights to privacy and their rights to be free from a significantly increased risk of identity theft and fraud—a substantial risk that Plaintiff and Class Members must now face for years to come because of Defendant's choices and failures.

## PARTIES

12.    Plaintiff Dias is a natural person and is a resident and citizen of Florida.

13.    Defendant LexisNexis Risk Solutions Inc. is a corporation organized under the laws of Georgia, with main offices in both Delaware and at 1000 Alderman Drive, Alpharetta, Georgia, 30005, where Defendant's CEO operates.

14.    Defendant's registered agent is CT Corporation System, 289 S. Culver Street, Lawrenceville, Georgia, 30046.

## JURISDICTION AND VENUE

15.    The Court has general subject matter jurisdiction over this civil action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because the amount in controversy is easily more than $5,000,000 and minimal diversity exists. Specifically, the Data Breach affected at least hundreds of thousands of people.

---

[7] https://risk.lexisnexis.com/corporate/privacy-policy#data-security.

Moreover, minimal diversity exists because Plaintiff is a citizen of Rhode Island while Defendant is a citizen of Delaware and New York.

16.    This Court has personal jurisdiction over Defendant its principal place of business is in this State and District.

17.    Venue is proper in this Court because Defendant's principal place of business is in this District.

**ADDITIONAL FACTUAL ALLEGATIONS**

18.    Defendant collected the PII of Plaintiff and the proposed Class Members, which it held and continues to hold unencrypted in its information systems.

19.    Defendant made implicit promises to Plaintiff and Class Members that his PII would be kept safe and confidential, and that the privacy of that information would be maintained. Indeed, maintaining the confidences of customer and employee Social Security numbers is so fundamentally expected that it is implicit in every relationship that includes the sharing of such confidential information.

20.    Plaintiff's and Class Members' PII was provided to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

21.    Defendant had a duty to adopt reasonable measures to protect the PII of

Plaintiff and Class Members from involuntary disclosure to third parties. Defendant has a legal duty to keep consumer's PII safe and confidential.

22.    Defendant had obligations created by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"), industry standards, and representations made to Plaintiff and Class Members, to keep his PII confidential and to protect it from unauthorized access and disclosure.

23.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties and knew or should have known it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

**Defendant's Data Breach Was Highly Foreseeable**

24.    The Data Breach here was highly foreseeable, especially because the vendor Defendant chose to entrust the PII to had already experience a recent data breach.

25.    Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting institutions that collect and store PII, like Defendant, preceding the date of the Data Breach.

26.    Data thieves regularly target institutions like Defendant due to the highly sensitive information in his custody. Defendant knew and understood that unprotected PII is valuable and highly sought after by criminal parties who seek to

6

illegally monetize that PII through unauthorized access.

27.    In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[8]

28.    As a custodian of PII, Defendant knew, or should have known, the importance of safeguarding the PII entrusted to it by Plaintiff and Class Members, and of the foreseeable consequences if its data security systems were breached, including the significant costs imposed on Plaintiff and Class Members because of a breach.

29.    Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

30.    Defendant was, or should have been, fully aware of the unique type and the significant volume of data in its systems, amounting to potentially thousands of individuals' detailed PII, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

31.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data

---

[8] *See* Identity Theft Res. Ctr., *2021 Data Breach Annual Report*, at 6 (Jan. 2022), https://notified.idtheftcenter.org/s/.

security measures for the PII of Plaintiff and Class Members.

32. The ramifications of Defendant's failure to keep secure the PII of Plaintiff and Class Members are long lasting and severe. Once PII is stolen, fraudulent use of that information and damage to victims may continue for years.

**Value of Personally Identifiable Information**

33. Identity theft is "a fraud committed or attempted using the identifying information of another person without authority."[9] It is described as "identifying information" such as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[10]

34. The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[11]

35. For example, PII can be sold at a price ranging from $40 to $200.[12]

---

[9] 17 C.F.R. § 248.201 (2013).

[10] *Id.*

[11] Anita George, *Your Personal Data Is for Sale on The Dark Web. Here's How Much It Costs,* DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs.

[12] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web,* EXPERIAN (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web.

Criminals can also purchase access to entire company data breaches from $900 to $4,500.[13]

36.    Based on the foregoing, the information compromised in the Data Breach is even more significant because it includes Social Security numbers, which is significantly difficult if not impossible to change.

37.    This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market."[14]

38.    The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches

---

[13] *In the Dark*, VPNOVERVIEW, 2019, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark.

[14] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

cannot necessarily rule out all future harm.[15]

**Defendant Failed to Comply with FTC Guidelines**

39.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the FTCA, 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

40.    In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal consumer information they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand his network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts

---

[15] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

of data being transmitted from the system, and have a response plan ready in the event of a breach.

41.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

42.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet his data security obligations.

43.    As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices and failed to audit, monitor, or ensure the integrity of its data security practices, or to appropriately prepare to face a data breach and respond to it in a timely manner. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

44.    Defendant was at all times fully aware of its obligation to protect the PII of consumers under the FTC Act yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

45.    Moreover, by reviewing the consent decrees the FTC has entered into with the companies after data breaches, companies should be able to easily see what standards and safeguards the FTC believes are mandatory to have a cybersecurity program that is appropriate and avoids amounting to a deceptive or unfair practice. These consent orders/decrees have been termed a sort of common law of cybersecurity safeguards, establishing a clearly defined standard of care for companies to follow.[16]

**Defendant Failed to Comply with Industry Standards.**

46.    Experts studying cybersecurity routinely identify institutions that store PII like Defendant as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

47.    Some industry best practices that should be implemented by institutions

---

[16] *See generally* Woodrow Hertzog & Daniel J. Solove, *The Scope and Potential of FTC Data Protection*, 83 George Wash. L.R. 2230 (2015).

dealing with sensitive PII, like Defendant, include, but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, implementing reasonable systems to identify malicious activity, implementing reasonable governing policies, and limiting which employees can access sensitive data. As evidenced by the Data Breach and its timeline, Defendant failed to follow some or all these industry best practices.

48.    Other best cybersecurity practices that are standard at large institutions that store PII include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points.

49.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR.DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

50.    Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

**Common Injuries & Damages**

51.    Because of Defendant's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of PII ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); and (d) the continued risk to his PII, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII.

**The Data Breach Increases Victims' Risk of Identity Theft.**

52.    Plaintiff and Class Members are at a heightened risk of identity theft for years to come, especially because Defendant's failures resulted in Plaintiff's and Class Members' Social Security number falling into the hands of identity thieves.

53.    The unencrypted PII of Class Members has already or will end up for sale on the dark web because that is the *modus operandi* of hackers. Indeed, when these criminals do not post the data to the dark web, it is usually at least sold on

private Telegram channels to even further identity thieves who purchase the PII for the express purpose of conducting financial fraud and identity theft operations.

54.    Further, the standard operating procedure for cybercriminals is to use some data, like the Social Security numbers here, to access "fullz packages" of that person to gain access to the full suite of additional PII that those cybercriminals have access through other means. Using this technique, identity thieves piece together full pictures of victim's information to perpetrate even more types of attacks.[17]

55.    With "Fullz" packages, cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals.

56.    The development of "Fullz" packages means here that the stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and Class

---

[17] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

**Loss of Time to Mitigate Risk of Identity Theft and Fraud**

57.    Because of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that his PII was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm and a Defendant arguing that the individual failed to mitigate damages.

58.    The need to spend time mitigating the risk of harm is especially important in cases like this where Plaintiff's and Class Members' Social Security numbers or other government identification are affected.

59.    By spending this time, data breach Plaintiff was not manufacturing his own harm, he was taking necessary steps at Defendant's direction and because the

Data Breach included his Social Security number.

60.     Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience because of the Data Breach, such as contacting credit bureaus to place freezes on his accounts; changing passwords and re-securing his own computer networks; and checking his financial accounts and health insurance statements for any indication of fraudulent activity, which may take years to detect.

61.     These efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to his good name and credit record."[18]

**The Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary**

62.     Based on the value of the information stolen, the data either has or will be sold to cybercriminals whose mission it is to perpetrate identity theft and fraud. Even if the data is not posted online, these data are ordinarily sold and transferred through private Telegram channels wherein thousands of cybercriminals participate in a market for such data so that they can misuse it and earn money from financial

---

[18] *See* U.S. Gov't Office, GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https://www.gao.gov/new.items/d07737.pdf.

fraud and identity theft of data breach victims.

63.    Such fraud may go undetected for years; consequently, Plaintiff and Class Members are at a present and continuous risk of fraud and identity theft for many years into the future.

64.    The retail cost of credit monitoring and identity theft monitoring can cost $200 or more per year per Class Member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft that arose from the Data Breach. This is a future cost for a minimum of seven years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard his PII.

**Plaintiff's Experience**

65.    Plaintiff's PII was compromised in the Data Breach and stolen by identity thieves who illegally accessed Defendant's network for the specific purpose of targeting the PII.

66.    Plaintiff takes reasonable measures to protect his PII.

67.    Plaintiff suffered actual injury in the form of a severe privacy invasion because of his PII, including his Social Security number, falling into the hands of identity thieves whose mission it is to use that information to perpetrate identity theft and financial fraud.

68.    Plaintiff suffered lost time, interference, and inconvenience because of

the Data Breach and has experienced stress and anxiety due to increased concerns for the loss of his privacy and because he knows he must now face a substantial increase in identity theft and financial fraud attempts for years to come.

69.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his PII, especially his name and Social Security number, being placed in the hands of criminals whose mission it is to misuse that data.

70.    Defendant obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure. Plaintiff's PII was compromised and disclosed because of the Data Breach.

71.    Because of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

72.    In addition to being exposed to a significant increase in identity theft and financial fraud, Defendant's failures and decisions represent a brazen violation of Plaintiff's and the Class's privacy, a harm long recognized in American courts.

### CLASS ALLEGATIONS

73.    Plaintiff brings this action on behalf of themselves and on behalf of all

19

members of the proposed class defined as:

> All individuals living in the United States whose PII was compromised in the Data Breach ("Class").

74.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members and staff.

75.    Plaintiff reserves the right to amend the definition of the proposed Class or to add a subclass before the Court determines whether certification is appropriate.

76.    This action is properly maintainable as a class action under the Federal Rules of Civil Procedure 23(A) and (B)(3).

77.    <u>Numerosity.</u> The Class Members are so numerous that joinder of all members is impracticable. Upon information and belief, Plaintiff believes the proposed Class includes thousands of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of Class Members is believed to exceed 300,000.

78.    <u>Commonality.</u> There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.  Whether Defendant engaged in the conduct alleged herein;

b.  Whether Defendant's conduct violated the FTC Act;

c.  When Defendant learned of the Data Breach;

d.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the PII compromised in the Data Breach;

e.  Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

f.  Whether Defendant's data security systems, prior to and during the Data Breach, were consistent with industry standards;

g.  Whether Defendant owed duties to Class Members to safeguard his PII;

h.  Whether Defendant breached his duties to Class Members to safeguard his PII;

i.  Whether hackers obtained Class Members' PII via the Data Breach;

j.  Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

k.  Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

l.  Whether Defendant knew or should have known its data security systems and monitoring processes were deficient;

m.  What damages Plaintiff and Class Members suffered as a result of Defendant's misconduct;

n.  Whether Defendant's conduct was negligent;

o.  Whether Defendant breached contracts it had with its clients, which were made expressly for the benefit of Plaintiff and Class Members;

p.  Whether Plaintiff and Class Members are entitled to damages;

q.  Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

r.  Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

79.    Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Defendant. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all other Class Members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

80. <u>Adequacy of Representation.</u> Plaintiff will fairly and adequately represent and protect the interests of Class Members. Plaintiff's counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

81. <u>Predominance.</u> Defendant has engaged in a common course of conduct toward Plaintiff and Class Members. For example, all of Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

82. <u>Superiority.</u> A class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating his individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards

of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

83.    Class certification is also appropriate. Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

84.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach, as is evident by Defendant's ability to send those individuals notification letters.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**
**NEGLIGENCE AND NEGLIGENCE PER SE**
**(On Behalf of Plaintiff and the Class)**

85.    Plaintiff incorporates the above allegations as if fully set forth herein.

86.    Plaintiff and Class Members provided their non-public PII to Defendant with the understanding that it would adhere to its legal obligations to protect such information.

87.    Defendant had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were

24

wrongfully disclosed.

88.     By assuming the responsibility to collect and store this data, Defendant had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

89.     Defendant had duties to employ reasonable security measures under Section 5 of the FTCA, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC through its consent orders and decrees, the unfair practice of failing to use reasonable measures to protect confidential data.

90.     Defendant's duty to use reasonable security measures also arose under the common law, and as informed by the FTC Act, which mandates that Defendant implement reasonable cybersecurity measures.

91.     Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that his systems and networks, and the personnel responsible for them, adequately protected the PII.

92.     Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and Class Members of the Data Breach.

93.     Defendant had and continues to have duties to adequately disclose that the PII of Plaintiff and Class Members within Defendant's possession might have

been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice is necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of his PII by third parties.

94.    Defendant breached its duties, pursuant to the FTC Act, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

b. Failing to choose an appropriate vendor and/or failing to secure said vendor account with multi-factor authentication;

c. Failing to adequately monitor the security of its networks and systems, including by failing to implement reasonable monitoring, logging, and alerting systems such as EDR/XDR, data loss prevention tools, and a centralized security event management system;

d. Allowing unauthorized access to Class Members' PII;

e. Failing to detect in a timely manner that Class Members' PII had been compromised;

f. Failing to remove Plaintiff's and Class Members' PII it was no longer

required to retain pursuant to regulations; and

g.  Failing to implement a reasonable cybersecurity incident response plan that would have enabled Defendant to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so they could take appropriate steps to mitigate the potential for identity theft and other damages.

95.    Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and Class Members.

96.    Defendant's violation of the FTC Act also constitutes negligence *per se*, as those provisions are designed to protect individuals like Plaintiff and the proposed Class Members from the harms associated with data breaches.

97.    Defendant has admitted that the PII of Plaintiff and Class Members was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

98.    But for Defendant's wrongful and negligent breaches of duties owed to Plaintiff and Class Members, the PII of Plaintiff and Class Members would not have been compromised.

99.    There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and Class Members and

the harm, or risk of imminent harm, suffered by Plaintiff and Class Members. The PII of Plaintiff and Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

100.   As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of his PII; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to his PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

101.  As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

102.   Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of his PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the PII in its continued possession.

103.   Plaintiff and Class Members are therefore entitled to damages, including restitution and unjust enrichment, declaratory and injunctive relief, and attorneys' fees, costs, and expenses.

104.   Given Defendant's failures to implement the proper systems, as defined above, even knowing the ubiquity of the threat of data breaches, Defendant's decision not to invest enough resources in its cyber defenses amounts to gross negligence.

**COUNT II**
**BREACH OF BAILMENT**
**(On Behalf of Plaintiff and the Class)**

105.   Plaintiff incorporates the above allegations as if fully set forth herein.

106.   Plaintiff conveyed his PII to Defendant lawfully with the understanding that Defendant would return or delete his PII when it was no longer required or otherwise return it.

107.   Defendant accepted this PII on the implied understanding that Defendant would honor its obligations under federal regulations, state law, and

industry standards to safeguard Plaintiff's PII and act on the PII only within the confines of the purposes for which Defendant collected Plaintiff's PII.

108.   By accepting Plaintiff's data and storing it on its systems, Defendant had exclusive control over the privacy of Plaintiff's data and its copy of that data in that Plaintiff had no control over whether Defendant's copy of Plaintiff's PII was protected with sufficient safeguards and indeed only Defendant had that control.

109.   By failing to implement reasonable cybersecurity safeguards, as detailed above, Defendant breached this bailment agreement causing harm to Plaintiff in the form of violations of his right to privacy and to self-determination of who had/has access to his PII, in the form of requiring them to spend his own valuable time responding to Defendant's failures, and in the form of forcing Plaintiff and the Class to face years of substantially increased risk of identity theft and financial fraud.

## **COUNT III**
## **INVASION OF PRIVACY/PUBLIC DISCLOSURE OF PRIVATE FACTS**
### **(On Behalf of Plaintiff and the Class)**

110.   Plaintiff incorporates the above allegations as if fully set forth herein.

111.   Plaintiff and Class Members took reasonable and appropriate steps to keep their PII, including their Social Security numbers, confidential from the public.

112.   Plaintiff's and Class Members' efforts to safeguard their own PII were successful, until Defendant failed to protect the same.

113.   Plaintiff and Class Members had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

114.   Defendant owed a duty to its customers and employees, including Plaintiff and the proposed Class Members, to keep their PII confidential.

115.   The unauthorized release of PII, including Social Security numbers, is highly offensive to any reasonable person.

116.   Plaintiff's and Class Members' PII is not of legitimate concern to the public.

117.   Defendant knew or should have known that Plaintiff's and Class Members' PII was private, as any reasonable person would.

118.   Defendant caused the publication of Plaintiff's and Class Members' PII to cybercriminals by choosing not to invest in or implement reasonable cybersecurity measures while being substantially certain that such a failure would lead to a data breach and its inherent harms.

119.   Indeed, such substantial certainty is clear given the ubiquity of data breaches.

120.   Moreover, the disclosure meets the definition of a publication because the disclosure was done to the exact people from whom cybersecurity measures are meant to protect Plaintiff and the Class—such that those identity thieves and

fraudsters are in a special relationship with Plaintiff and the Class.

121.   Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that Defendant's inadequate data security measures will likely result in additional data breaches. Plaintiff and Class Members have no adequate remedy at law for the injuries that they will sustain in that a judgment for monetary damages will not prevent further invasions of the Plaintiff's and Class Members' privacy by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all Class Members, requests judgment against Defendant and that the Court grant the following:

A.   For an Order certifying this action as a class action and appointing Plaintiff and his counsel to represent the Class;

B.   For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

C.   For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the

interests of Plaintiff and Class Members, including but not limited to an order:

i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii.    requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

iii.    requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.    requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

v.    prohibiting Defendant from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

vi.    requiring Defendant to engage independent third-party

security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Defendant to audit, test, and train his security personnel regarding any new or modified procedures; requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

ix.    requiring Defendant to conduct regular database scanning and securing checks;

x.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to

be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xi.   requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii.  requiring Defendant to implement a system of tests to assess his respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiii. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured,

tested, and updated;

xiv.    requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

xv.    for a period of 7 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.    For an award of actual damages, compensatory damages, and nominal damages, in an amount to be determined, and for punitive damages, as allowable by law;

E.    For an award of attorneys' fees and costs pursuant to O.C.G.A. §13-6-11, and any other expenses, including expert witness fees;

F.    Pre- and post-judgment interest on any amounts awarded; and

G.    Such other and further relief as this court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demand a trial by jury on all issues so triable.

Dated: May 29, 2025                    Respectfully submitted,

                                       */s/ Joseph B. Alonso*
                                       Joseph B. Alonso
                                       Georgia Bar No. 13627
                                       Daniel H. Wirth
                                       Georgia Bar No. 873443
                                       **Alonso & Wirth**
                                       1708 Peachtree St., Ste. 303
                                       Atlanta, GA 30309
                                       Phone: 678-928-4509
                                       Fax: 678-490-3668
                                       jalonso@alonsowirth.com
                                       dwirth@alonsowirth.com

                                       J. Gerard Stranch, IV (*Pro Hac Vice
                                       forthcoming*)
                                       Grayson Wells, (*Pro Hac Vice forthcoming*)
                                       **STRANCH, JENNINGS & GARVEY,
                                       PLLC**
                                       223 Rosa L. Parks Avenue, Suite 200
                                       Nashville, TN 37203
                                       Tel: (615) 254-8801
                                       gstranch@stranchlaw.com
                                       gwells@stranchlaw.com

                                       ***Counsel for Plaintiff and the Class***

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D, the attached pleading complies with the font and point selections prescribed by Local Rule 5.1B & C and uses 14-point Times New Romen font.

*/s/ Joseph B. Alonso*
Joseph B. Alonso
Georgia Bar No. 013627
